TotteN, J.,
delivered the opinion of the court.
This is an action of ejectment in the circuit court of Davidson, for a lot of land in the city of Nashville. The lessors of the plaintiff derive title by descent from James Clark, their ancestor, who died intestate in 1832, seized of a valid, legal title to the land. John Peck became the administrator of said intestate, and was sued as administrator, before a justice of the peace in Davidson county, in two cases, by Gilbert G. "Washington, a creditor of the intestate. The judgment in one of the cases is as follows — to wit:
“ March 12, 1833. This came on to be tried before me on this day. The defendant appeared and pleaded that he had full/y administered, and that there were notes, bonds, and judgments outstanding. I find that there are notes, bonds and judgments outstanding, more than sufficient to cover all the assets in defendant’s hands, and therefore find his plea true; but, also, enter judgment against decedent’s estate for the sum of nineteen dollars 62 1-2 cents, and costs of suit.
“William: Lytle, J. P.”
On this judgment, execution was issued, on which the officer made return, in these words:
“ No property to be found; this 10th April, 1833.
“ AlleN CottoN.”
*158 The papers were now returned to the circuit court, where a scire facias was issued, and made known to the heirs of said intestate, the object of which was, to have execution of the lands descended to them from said intestate.
At September Term, 1833, the parties appeared, and by consent, the pleas filed in said suit were withdrawn: The record proceeds to state that a jury “found for the plaintiff,” and a judgment is rendered, that the plaintiff have execution for the real estate, descended from said intestate to said heirs, for his debt, &c.
On this judgment, execution was issued, and the land sold by the sheriff, January 18th, 1834, for ninety-seven dollars, to Peter Jonte. There were various other judgments in the county court, against said estate, in which costs had accrued to Henry Ewing, the clerk, in virtue of which, as the owner of the costs, as clerk, he redeemed said lands from Peter Jonte, who assigned and transferred his bid, and ordered the sheriff to make deed to Henry Ewing, by writing, dated 25th April, 1834.
There were other redemptions, transfers, and orders, to the sheriff, of the same character, down' to John Shelby; to whom the sheriff executed a deed for said lot of land, February 9th, 1836, reciting therein, the judgments and sale, the assignments and orders before stated. The defendant in possession, deduces a regular title from John Shelby, and the case turns upon the validity of said sale. There was judgment for the plaintiff, and defendant appealed in error to this court.
1. It is now argued for the heirs, that both the • proceedings before the justice, and before the county court, were irregular and void; that the title of the heirs was *159 not divested, and that none was communicated to Peter Jonte, the purchaser;
.In reviewing the record of this sale, with reference to the objections relied upon in argument, we may observe, that if the proceeding be merely irregular and erroneous, that does not vitiate the sale. To have this effect, it must be null and void in itself.
It is not to be denied, that the proceeding is, in some respects, informal. The officer who served the warrant, and made return on the execution, before the justice, omits to name his official character. Tire pleading before the justice is in brief, and perfectly informal. The judgment in the county court recites the withdrawal of the pleas, and yet states the finding of a jury. Such are some of the objections relied upon by counsel. And it is further insisted, that it was not competent for the justice to try the plea of plene ad-mimst/ravit, and that it could only be tried by a jury. But we are of opinion, that the objections, except the last, are merely formal, and that they do not go to the substance and validity of the record of this sale'. Nor do we think that any jury was necessary, but that it was competent for the justice to determine any proper defense that might be made before him. This proceeding to subject real estate descended to heirs, to the payment of their ancestor’s debt, is authorised and prescribed by the acts 1184, ch. 11; and 1822, ch. 43. They are to be taken and construed together. The personal representative may plead “fully administered,” “no assets,” or, “not sufficient assets.”
The plea is to be tried in the forum, where it may be properly pleaded; if in the county court, (now circuit court,) it will be tried by a jury; if before a justice *160 of the peace then by a justice. Tbis trial does not conclude the heirs; for they may; as a defense to the scire facias, plead that the executor, or administrator, has assets, or has wasted the same.
If this defense be made, it is a matter to be tried between the heirs and the administrator or executor, and if found against the latter, will defeat the scire facias, and subject the administrator or executor, in his own proper estate, to the payment of the debt. But if it be not made, the administrator or executor need not appear in the proceeding by scire facias, and the judgment on his plea in the former proceeding, will be taken as admitted. If the heirs had pleaded that the administrator had assets, it would have become necessary to notify him to appear and defend against that plea, as the proceeding was transferred from the justice to the county court. But, otherwise, if it had originated there, as in that case, he would be already in court. As to the necessity of a jury in the present case, we may further observe, that the justice had jurisdiction of the matter before him. The defense, if true, was proper to be made, and it must be competent for the justice to determine it, as no other forum had any power over it, in the first instance. As to the informal matter in the county court judgment, stating a jury where there were no pleas, we can only say, that that should not vitiate a judgment proper in itself, and which might be valid without any jury. The heirs being summoned, appear and file pleas; these pleas, which we are to presume they were unable to prove, are withdrawn, and thereon a proper judgment, that the creditor have execution of the real estate, &c., is rendered. This must be taken .as a valid judgment. It is in effect, *161 a judgment nil died,. ¥e are of opinion, therefore, that the sale to Peter Jonte, the purchaser, was valid.
2. In the next place, it is insisted that the redemption from Peter Jonte, by Henry Ewing, was void, he not being a judgment creditor. Exception is also taken to the whole series of redemption; and thereon, it is argued that the sheriff’s deed was illegally made to John Shelby, and had no effect to invest him with the legal title. This is not a material question in the present case.
Peter Jonte assigns his interest and orders the sheriff to make title to Henry Ewing, and so, in the whole series to John Shelby.
The judgments, sale, assignments and orders, are referred to in the sheriff’s deed. This was quite sufficient to invest John Shelby with the legal title, whether the redemptions were valid or void. In Trotter vs. Welson, 1 Swan’s R. 13, the court say, “ that as to third persons, it should be presumed from the mere recital of the assignment in the sheriff’s deed, that the sheriff was authorized by the purchaser to make the deed to another, under and by virtue of the sale. It is not competent in the present case, for the defendant to make objection to the form of the assignment. The deed invests the plaintiff’s lessors with the legal title, and it cannot be material to the issue whether the purchaser, who is supposed to have assigned his right, has any equitable interest in the land or not.” The same principle applies to the case now before us, and renders it immaterial to make any enquiry into the validity of these redemptions.
The judgment will be reversed, and the cause remanded for a new trial.
Judgment reversed.